HALKO, Respondent, *v.* ANDERSON et al., Appellants.

(No. 7,816.)

(Submitted February 8, 1939.   Resubmitted May 3, 1939.   Decided June 27, 1939.)

[93 Pac. (2d) 956.]

*Mr. H. O. Vralsted,* for Appellants, submitted briefs, and argued the cause orally.

*Mr. O. B. Kotz* and *Mr. H. Norskog,* for Respondent, submitted briefs; *Mr. Kotz* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an action to quiet title to certain described real property in Judith Basin county. The complaint as originally filed contained two causes of action, the first to quiet title, and the second to recover possession of the property and for damages. After the defendants filed their answer they filed written demand for a jury trial. Plaintiff thereupon dismissed the second cause of action. The demand for a jury was denied. The cause went to trial upon the complaint based upon the first cause of action alone, and the answer thereto.

The complaint was in the usual form of an action to quiet title. It alleged that plaintiff ever since the 9th day of March, 1936, has been the owner in fee of the property described; that defendants claim some interest therein adverse to plaintiff; that the claim of defendants is without right, and that defendants have no estate or interest in the property.

A joint answer was filed in which defendants Robert Anderson and Louis Anderson, Jr., disclaim any right, title or interest in the property. The defendant L. I. Anderson and his wife, Ethel Anderson, denied all the allegations of the complaint except they admitted that they claim an interest and right in and to the property, and defendant L. I. Anderson alleged that he is the owner of the property.

As an affirmative defense, L. I. Anderson alleged that he acquired the property by warranty deed from Lars Waldeland on February 13, 1917, for the price of $10,200; that thereafter he made improvements upon the property of the value of $7,000; that on January 1, 1925, he and his wife, the defendant Ethel Anderson, executed and delivered to Waldeland their note in the sum of $5,800 and a mortgage on a portion of the property in question to secure its payment; that about the same time they gave him a second note in the sum of $1,815.67, and a mortgage upon a portion of the land; that both notes and mortgages called for payment on January 1, 1930; that, being unable to make the payments, on or about January 4, 1930, they executed and delivered to Waldeland a warranty deed to the property which, they allege, pursuant to an understanding had with Waldeland, was to be considered as additional security for the indebtedness, and that it was agreed that the title to the property should not thereby be transferred and vested in Waldeland and that he should not foreclose his mortgages, and that they, the answering defendants, should remain in the actual, physical possession of the property for which they should pay $250 a year, to be applied on taxes and interest; that, upon information and belief, plaintiff at all times had both actual and constructive notice of defendants' rights; that plaintiff has had actual and constructive knowledge at all times of the fact that defendants had been in possession of the property, and that they had and claimed an interest therein as owners. It is further alleged that Waldeland and plaintiff conspired to defraud the defendants of the lands. No reply was filed by plaintiff.

At the beginning of the trial defendants renewed their demand for a jury trial, which was denied.

The undisputed evidence, briefly summarized, was as follows: Patents were issued by the United States to Lars Waldeland on the lands in question. Thereafter, and on May 28, 1934, Waldeland conveyed a part of the premises by warranty deed to Ebenezer Home Society, a Minnesota corporation; this deed was recorded on December 7, 1935. Another deed was executed on January 28, 1936, to the same company, and recorded February 27, 1936, covering the additional land. On March 9, 1936, Ebenezer Home Society executed a deed to plaintiff covering the land, which was recorded on April 2, 1936.

It appears from evidence offered by defendants that on February 13, 1917, Waldeland and wife gave to L. I. Anderson a warranty deed to the property in consideration of the payment of $10,200. In October, 1927, he deeded the property to his wife, Ethel Anderson. On February 14, 1917, Anderson and wife gave a mortgage to Waldeland covering part of the land for $4,550, and at the same time gave another mortgage to Waldeland covering part of the land for $1,750, and another mortgage to the United Norwegian Lutheran Church of America for $500; on December 1, 1924, Anderson and wife mortgaged part of the land to the same company for $599.24; on December 23, 1925, Anderson and wife gave Waldeland a mortgage on all the land for $5,800, and another mortgage for $1,815.67 on January 1, 1925. On April 4, 1930, Ethel Anderson and her husband deeded the lands back to Waldeland, the deed being recorded May 10, 1930. Thereafter Waldeland released the mortgage dated February 14, 1917, for $4,550, the mortgage dated December 23, 1925, for $5,800, the mortgage of January 1, 1925, for $1,815.67, and obtained a release of the mortgage of December 1, 1924, for $599.24, given by the Andersons to the United Norwegian Lutheran Church of America.

Defendant Anderson, in explaining the giving of the deed to Waldeland, said that his dealings were with August Nelson, an agent of Waldeland. In explaining what conversation took place he said: "A. Well, it was to satisfy this mortgage by giving the deed back, and then I was to live on the place, or we were, had possession of it all the time, and when I got in posi-

tion where I could recover this here, or get it back, I was to have a chance at it, and if it was sold, so he insisted on having his money, and I had the first right. Q. What do you mean by the first right? A. To purchase it back if Waldeland sold it. Nothing was said in this conversation as to what price I could purchase it, but I was to have the first right." Later he said: "After I gave the deed, I had a conversation with Waldeland in the fall of 1935 at Minneapolis. Just he and I were present. The conversation was about this land. It is kind of hard to exactly remember the words. We were talking about this land again and he was going to give me a five year lease on it and I said, 'What would you take for the place, that is, sell it back?' He said, 'You say what you would give.' 'Well, I said, I told him, I would sooner you put the price on it first.' 'No,' he said, 'You go ahead and say.' I said, 'Will you take $4,000?' He said 'no, but I might take $5,000.' * * * There was a conversation about what payments I were to make before I gave the deed to Waldeland. The conversation was with Mr. Nelson. The first year it was free, and second year about $475 and then it was reduced to $250."

The substance of defendants' claim to the lands was that they were tenants on the property, and the oral understanding with Waldeland that they were to be given the first chance to buy the property back from him, which opportunity was never given to them, and that they are in a position and are willing to pay the same price for the land which plaintiff paid.

In rebuttal plaintiff testified that before he purchased the land he inquired of the Ebenezer Home Society as to what interest Anderson had in the land, and was informed by letter that he was a tenant under a year to year arrangement with Waldeland, the former owner.

The court entered judgment for plaintiff, and defendants L. I. Anderson and Ethel Anderson appealed from the judgment. The principal point urged by defendants is that the court erred in denying their demand for a jury trial.

In general, defendants contend that, since they were in possession of the property and plaintiff was not in possession,

the right of possession would necessarily be involved, and that, therefore, they were entitled to the right of trial by jury. On the record, it is not necessary to pass upon that point.

It is well established that a judgment will not be reversed for ██ harmless error. (*Hill* v. *Chappel Bros.*, 97 Mont. 305, 33 Pac. (2d) 819; *Montana Livestock & Loan Co.* v. *Stewart,* 58 Mont. 221, 190 Pac. 985.) A judgment will not be reversed to grant the losing party the abstract right of a trial by jury when the record discloses nothing for the jury to determine. (*Hahn* v. *Shaubut,* 45 Mont. 326, 123 Pac. 694.)

As we shall point out, had a jury trial been granted it would have been incumbent upon the court to grant a motion for directed verdict in favor of plaintiff; or had the case been submitted to a jury and a verdict found for defendants, the court would have been bound to set it aside, and hence defendants are in no situation to complain that the court denied them a jury trial.

The case presents some difficulty because of the fact that the allegations of the answer stand admitted for failure to reply; however, this admission applies only to matters well pleaded. The charge of conspiracy and fraud between Waldeland and plaintiff was but a naked conclusion without allegation of facts, and the failure to reply thereto did not constitute an admission of the conclusion of the pleader.

The allegations in the answer to the effect that the deed from Anderson and wife to Waldeland should not transfer title but should be regarded as additional security, admitted by failure to reply, might have given defendants the right to a judgment on the pleadings, but not to a jury trial. In any event, the theory relied upon by defendants to the effect that the deed to Waldeland was only a mortgage was abandoned at the trial, and defendants relied upon the fact that they were to be given the first chance to buy back the property.

The only claim of defendants relied upon in the evidence— ██ ˙ and this was inconsistent with the theory that the deed to Waldeland was only a mortgage—is the understanding between them and Waldeland that they should have the first right

to purchase the land at some indefinite time and for an indefinite amount and in the meantime occupy it as tenants. This understanding was conceded to have been oral. There was no proof that plaintiff knew anything about it when he purchased the property. It could not possibly amount to an interest in the real estate. But defendants contend that since they were in possession of the property when plaintiff purchased it, and since plaintiff knew they were in possession thereof, he is chargeable with knowledge of what could have been ascertained upon reasonable inquiry. But if the deed by them to Waldeland is not a complete answer to any inquiry which their possession suggested (compare *Bingham* v. *Kirkland*, 34 N. J. Eq. 229), had plaintiff made inquiry from them as to their rights and interest, he would have learned no more than what the defendants testified to, and, as we have said, that constituted no interest in the real estate, particularly where, as here, Waldeland had already transferred the land to another before plaintiff became the purchaser. Defendants may have a cause of action against Waldeland, but they have no interest in the real estate which they can assert as against plaintiff, who stands as an innocent purchaser for value from one who had purchased the property from their own grantee by absolute deed without any instrument of defeasance.

Plaintiff, having no notice of any claim or interest of defendants to the real estate when he purchased it, is entitled to the protection of section 8265, Revised Codes, reading: "When a grant of real property purports to be an absolute conveyance, but is intended to be defeasible on the performance of certain conditions, such grant is not defeated or affected as against any person other than the grantee or his heirs or devisees, or persons having actual notice, unless an instrument of defeasance, duly executed and acknowledged, shall have been recorded in the office of the county recorder of the county where the property is situated." Plaintiff comes within the rule stated in *Harrington* v. *Butte & Superior Copper Co.*, 52 Mont. 263, 157 Pac. 181, as follows: "The underlying principle of this rule is

that the mortgagor, by making the mortgagee the ostensible owner in fee, arms him with power of attorney by which he can convey the title, and when he has made a conveyance to a purchaser for value without notice, the mortgagor is fully divested of his title, and is clearly estopped by the deed from questioning the purchaser's title.''

Other contentions have been made by defendants, but, from what we have already said, if any error was committed by the court it has resulted in no prejudice to them; however, we have examined the other points urged by them and find no merit in any of them. The court properly entered judgment for plaintiff.

The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, STEWART and ERICKSON concur.

Rehearing denied September 26, 1939.