COY BROWN, Plaintiff and Respondent, *v.* HAROLD H. AND CLARICE D. GRIFFIN, Defendants and Appellants.

No. 11285.
Submitted January 11, 1968. Decided January 30, 1968.
436 P.2d 695.

Vance & Leaphart, Helena, C. W. Leaphart, Jr. (argued),

500

Helena, John H. Jardine (argued), Whitehall, for defendants and appellants.

Collins & Burns, Dillon, Richard F. Burns (argued), Dillon, for plaintiff and respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

Appeal by sellers from a judgment in favor of purchaser entered by the district court of Madison County decreeing specific performance of a contract of sale of a ranch and related personal property and awarding compensatory damages for wrongful possession of the same.

Plaintiff in the case was Coy J. Brown, who contracted to purchase the ranch. He died after the trial and judgment in district court and during the pendency of this appeal; his executor, his son and agent at all times, has been substituted for the purpose of this appeal. For simplicity and because the rights of each are identical, the Browns will be referred to herein as the purchaser. Defendants are Harold H. Griffin and Clarice D. Griffin, husband and wife, who contracted to sell the ranch and who will hereafter be referred to as the sellers.

On January 16, 1964, purchaser and sellers executed a written "Receipt and Agreement to Sell and Purchase" sellers' ranch in Madison County, together with personal property used in connection with the operation of the ranch. Purchaser agreed to pay the total purchase price of $51,000 as follows: $20,000 "earnest money" in partial payment of the purchase price at the time of execution of the contract, assumption of an existing mortgage on the property of $24,000, and payment of the balance of $7,000 on or before July 1, 1964. Purchaser was entitled to immediate possession of the land excepting the dwelling house the possession of which sellers were entitled to retain until the balance of the purchase price was paid in full and thereafter at an agreed rental of $35.00 per month. Sellers were required to use the "earnest money" deposit to pay off in

full the equity of a former owner of the property from whom sellers had purchased. The contract further provided:

"1. It is further agreed: Seller shall at his expense furnish Purchaser an Abstract of Title continued to date, subsequent hereto showing merchantable title to the above-described property vested in Seller, or in lieu thereof, at Seller's option, a title insurance policy insuring title thereto vested in Purchaser, *free and clear of all liens and encumbrances,* except the above mentioned mortgage to The Connecticut Mutual Life Insurance Co., to the extent of $24,000.

"It is further agreed that the broker assumes no responsibility in regard to the title and broker recommends that Purchaser have the Abstract of Title or Title Insurance Policy examined by an attorney.

"2. The real property is to be conveyed by warranty deed and the personal property by Bill of Sale free and clear of all encumbrances except * * * *those enumerated in Section 1 above* * * *

"4. * * * if Seller's title is not merchantable or insurable and cannot be made so within a reasonable time, after written notice containing statement of defects is delivered to Seller, then said earnest money herein receipted for shall be returned to the Purchaser on demand and all rights of Purchaser terminated unless Purchaser waives said defects and elects to purchase; but if * * * Seller's said title is merchantable or insurable and Purchaser neglects or refuses to complete the purchase or shall fail to pay the balance of the purchase price as hereinabove provided, then said earnest money shall be forfeited to the Seller as liquidated damages and not as a penalty and this Agreement thereupon shall be of no further force or effect. * * *

"7. Time is of the essence of this Agreement * * *." (Emphasis supplied.)

The purchaser paid $20,000 at the signing of the contract and shortly thereafter took possession of the property except-

ing the dwelling house. Later purchaser placed his own cattle on the pasture land, did some work to bring the summer crops to maturity, and performed some maintenance work on the premises.

Meanwhile on January 25, 1964, sellers paid off the equity of the former owners and ordered a title insurance policy. Apparently at no time did sellers advise purchaser, (1) of their election to furnish title insurance, (2) their ordering of title insurance, or (3) their paying off the equity of the former owners.

On the evening of July 3, 1964, when the sellers were over at the Brown's for ice cream, cake and talk, it became apparent that sellers considered purchaser in violation of the contract, had consulted an attorney about this a day or so previously, and that a notice of termination of the contract for failure to pay the final payment of $7,000 and make arrangements for assumption of the $24,000 mortgage by July 1 had been turned over to the sheriff for service on the purchaser. At this point a rather frosty atmosphere blanketed the assembled group. The sellers left shortly thereafter.

That same evening purchaser's son contacted Camilla Gage, the realtor handling the transaction, advising her of these developments and depositing with her a $7,000 check to cover the purchaser's final payment on the contract. The following day the sheriff served the notice of termination of the contract referred to above. Shortly thereafter, the sellers took possession of the ranch and have remained in possession continuously since. At no time did sellers furnish purchaser either an abstract, title insurance or any evidence of title; nor did sellers at any time execute a warranty deed or bill of sale, refusing to do so until after they had received final payment. Purchaser at no time prior to July 1 notified sellers or demanded of sellers that they furnish an abstract or title insurance policy.

On September 10, 1964, purchaser filed suit against sellers essentially seeking to compel sellers to specifically perform the

contract and to secure damages from sellers for their wrongful seizure and possession of the property in question. In this suit purchaser contended, among other things, that he had been since the time of execution of the contract and still was ready, willing and able to pay the balance owed on the contract but that no abstract, title insurance policy or evidence of sellers' title had ever been furnished him. Purchaser further elected to receive an abstract of title in default of sellers' election within a reasonable time. Trial was had before the Honorable Jack D. Shanstrom, presiding Judge, sitting without a jury who thereafter entered findings of fact, conclusions of law and judgment against sellers. The judgment generally ordered restoration of possession to purchaser with damages for wrongful seizure and possession by sellers; delivery of an abstract showing merchantable title to purchaser, who would have 60 days thereafter in which to make written objection to title, and after curing defects, if any, (1) the final payment on the purchase price would become payable, (2) adjustment of mutual rights and liabilities of the parties would take place consisting of appropriate credits and liabilities specified therein, and (3) execution of deed and bill of sale by sellers contemporaneous with payment of balance owing by purchaser as so adjudged. From this judgment sellers appeal.

The issues which sellers present for review are as follows:

(1) Is exact compliance with the terms of the contract making "time of the essence" essential to purchaser's right to compel specific performance?

(2) Is a finding that purchaser "has been, and still is ready, able and willing to perform the contract fully on his part" the legal equivalent of tender of performance by purchaser?

(3) Does the preponderance of evidence show tender of performance by purchaser?

(4) Must purchaser prove that damages and restitution are inadequate remedies and that an unconscionable result would

occur without specific performance in order to secure a decree of specific performance?

It should be noted that all these issues are bottomed on the sellers' basic contention that the decree of specific performance cannot stand in the instant case because (a) purchaser failed to pay or tender payment of the $7,000 balance of the purchase price to sellers by July 1, and (b) adequacy of other remedies, specifically damages and restitution.

In our view, none of the first three issues presented for review are material to the decision in this case. If all were answered favorably to sellers, they still would not prevail. The reason these issues are immaterial in the instant case is that each is predicated on the proposition that the contract requires payment of $7,000 or tender thereof by the purchaser by July under the facts and circumstances disclosed here. We do not so construe this contract.

The contract is to be construed according to the intention of the parties at the time of contracting (section 13-702, R.C.M.1947); and the language of the contract governs its interpretation (section 13-704, R.C.M.1947) unless the language is doubtful or ambiguous in which case the conduct of the parties under the contract is one of the best indications of their true intent. (Musselshell Valley Farming and Livestock Co. v. Cooley, 86 Mont. 276, 283 P. 213.) The interpretation of the contract required in the instant case is whether performance of the sellers' agreement to furnish an abstract or title insurance must be rendered prior to, concurrently with or subsequent to purchaser's agreement to make the final $7,000 payment on the purchase price. Sellers argue that their obligation to furnish an abstract or title insurance and purchaser's obligation to make final payment on the purchase price are mutually dependent covenants to be concurrently performed; as such neither party can compel performance by the other without performance or tender thereof on his part, and that when neither party performs when performance is due and time is of

the essence, the contract is simply at an end with both parties restricted to restitutionary remedies. On the other hand, purchaser argues that sellers' obligation to furnish an abstract or title insurance is a condition precedent to performance of purchaser's agreement to make the final $7,000 payment on the purchase price; that a contract providing that "time is of the essence" requires compliance as much by the sellers as by the purchaser; that where sellers' performance is required first in point of time and is neither performed nor tendered, purchaser's subsequent performance is excused until performance or tender by sellers; that because purchaser was ready, willing and able to perform his agreement to make the final $7,000 payment at all times the contract is not at an end after July 1 but is specifically enforceable by purchaser without the necessity of formal tender of performance.

In the instant case, the contract does not expressly provide for the time of performance of sellers' agreement to furnish an abstract or title insurance. Under such circumstances a reasonable time will be implied. (Section 13-723, R.C.M.1947; Bennett v. Dodgson (Wise River Lbr. Co.), 129 Mont. 228, 284 P.2d 990). What is a reasonable time in a given case depends upon the totality of the surrounding circumstances. As a general rule, a contract providing that an abstract showing merchantable title shall be furnished without specifying a particular time is construed to require such abstract as a condition precedent to any liability of the purchaser to pay for the property. (55 Am.Jur., Vendor & Purchaser, § 293, p. 732, and 310, p. 742; 91 C.J.S. Vendor & Purchaser § 100(b) (1), pp. 990, 991.) In the instant case, the intention of the parties that the abstract or title insurance be furnished as a condition precedent to final payment is readily ascertainable from the language of the contract. Among other things, the contract provides that if the sellers' title is not merchantable or insurable and cannot be made so within a reasonable time after written notice of defects, the earnest

money shall be returned to the purchaser. Why only the earnest money? Because the intention of the parties at the time of contracting was that an abstract or title insurance was to be furnished by the sellers sufficiently in advance of final payment (1) to enable examination thereof by purchaser's attorney, (2) to enable purchaser to give sellers written notice of defects, if any, and (3) to permit correction of defects, if any, and if possible, by sellers, all before the final payment was to be made by purchaser. This interpretation is further buttressed by the provisions in the contract recommending that the purchaser have the abstract or title insurance policy examined by an attorney. To what avail if the contract is interpreted to require him to part with the full purchase price before opportunity for such examination and requiring only refund of the earnest money?

But perhaps the best evidence of the true intention of the parties is the interpretation that they themselves put on the contract as evidenced by their own conduct. It is undisputed that purchaser at all times thought he was to get an abstract or title insurance prior to final payment. Sellers thought so also, as evidenced by their ordering a title insurance policy from Frank Blair on January 25, nine days after execution of the contract and over five months before the July 1 final payment date when they paid off the equity of the previous owner, all as testified to by seller Harold H. Griffin without contradiction. Sellers' conduct on January 25 speaks more eloquently than a thousand words uttered two and one-half years later at the trial as to their interpretation of the contract at the time of contracting.

It should be noted that one provision of the contract (section 1 set forth above) requires sellers to furnish purchaser either (1) an abstract continued to a date subsequent to execution of the contract showing merchantable title vested in sellers, or (2) a title insurance policy insuring title vested in purchaser. A literal reading of this provision might lead to

the conclusion that the furnishing of a title insurance policy was not required as a condition precedent to final payment by purchaser because such a policy could not be procured prior to recording of the warranty deed from sellers to purchaser. The same literal reading would also lead to the conclusion that the furnishing of the title insurance policy was not required until some time subsequent to final payment after the deed had been delivered, recorded, and the title policy issued which is clearly contrary to the general intent and purpose of the whole contract. Being mindful that particular clauses of a contract are subordinate to its general intent (section 13-716, R.C.M.1947), and that repugnancies in a contract must be reconciled to give them some effect, if possible, subordinate to the general intent and purpose of the whole contract (section 13-718, R.C.M. 1947), we interpret this clause read in connection with the contract as a whole to require sellers to furnish purchaser, as a condition precedent to final payment, evidence of insurability of the title in purchaser as owner, subject to recording of the warranty deed.

Finally, in a Montana case involving a similar contract containing identical provisions relating to sellers' agreement to furnish an abstract or title insurance as set forth in sections 1 and 4 of the contract in the instant case, the United States Court of Appeals construed the contract as not requiring purchasers to pay any part of the final payment until the sellers furnished the purchasers the abstract or title insurance policy mentioned in the contract. (Woodbury v. Clermont, (C.C.A.9, 1956) 236 F.2d 132.) Under such circumstances no formal tender of performance by purchasers is necessary as a condition precedent to specific performance. Mishelsky v. Carman, 320 Ill. 123, 150 N.E. 676.)

There is no indication in the Woodbury case as to whether that contract contained a "time of essence" clause or not. But does such a clause affect the interpretation of the instant contract? We think not. Although there is an admitted

conflict of authority on this point, in our view the better reasoned cases support this view. (See Nyder v. Champlin, 401 Ill. 317, 81 N.E.2d 923, 5 A.L.R.2d 282; Neidhardt v. Frank, 325 Ill. 596, 156 N.E. 769; State, etc., v. Bonnett, 114 Utah 546, 201 P.2d 939.)

For the foregoing reasons, and based upon the authorities cited above, we hold that the contract in the instant case required sellers to furnish purchaser with the required abstract or title insurance as a condition precedent to any obligation of the purchaser to make the final payment or assume the existing mortgage notwithstanding the July 1 payment date. We further hold that as this condition precedent was never performed, purchaser never became obligated to pay or assume the existing mortgage and was not in default; that under such circumstances a tender of performance by purchaser is unnecessary as a condition precedent to compelling specific performance by sellers.

Sellers' argument that the contract simply ended with nonperformance of their respective agreements is obviously untenable because it is based on the premise that the respective obligations are mutually dependent covenants to be contemporaneously performed. Such is not the case here for the reasons previously stated, so sellers' argument fails in this respect. From what has been said before it is obvious that the contract did not lapse on July 1 because no performance was due at that time by the purchaser under the circumstances disclosed here.

Sellers' issue No. 4 presented for review relates to the adequacy of other remedies. Sellers contend that in order to entitle purchaser to relief by specific performance he must prove that (1) damages and restitution are inadequate remedies, and (2) that an unconscionable result would occur without specific performance. Monetary damages are presumed to be an inadequate remedy in contracts for the purchase of land (sections 17-801, subd. (2) and 17-804, R.C.M.1947; Ward v.

Mattuschek, 134 Mont. 307, 330 P.2d 971; Conner v. Helvik, 105 Mont. 437, 73 P.2d 541; Hogan v. Thrasher, 72 Mont. 318, 233 P. 607; Christiansen v. Aldrich, 30 Mont. 446, 76 P. 1007.) Sellers argue that this presumption was rebutted by testimony of purchaser and his son that they could ascertain the damages if not allowed to obtain the property. The testimony of purchaser's son, called as an adverse witness for sellers, reads as follows:

"Q. Now Mr. Brown, you have testified as to your damages. What would your damages be if you didn't get this place—I mean, what would this be? 30,000, 40,000, 50,000? Have any idea? A. It would be a-plenty.

"Q. Could you make an estimate? Would 50,000 do it? That's a pretty good figure. A. A person could figure up that much, I suppose, if you wanted to.

"Q. At least it isn't out of the realm of possibility? A. No."

The testimony of the father, called as an adverse witness by sellers, was this:

"Q. Mr. Brown, I asked your son this, too. If you didn't have possession of this place, you feel that you've been damaged, that's correct, is it not? A. Yes.

"Q. And I asked him the damages could conceivably run maybe even 40, 50,000 dollars, would that be right? A. Yes, that would be right.

"Q. In other words, you could add them up to that much possibly? A. Yes, could."

This is the sum total of evidence cited as proof that damages are an adequate remedy and specific performance is improper. This is no proof that damages are an adequate remedy but at best only some proof of the possibility of computing damages up to a certain figure if specific performance was not allowed. It is wholly insufficient as proof that damages are an adequate remedy. Thus, the presumption controls and specific performance is proper. Neither will restitution of the purchase price (which sellers have offered to re-

fund) provide an adequate remedy because purchaser not only has lost the benefit of his bargain but the land cannot be duplicated, it being a unique commodity. This, of course, is the basis for the rule.

We have reviewed the findings, conclusions and judgment entered by Judge Shanstrom and find them to be correct.

The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, CASTLES and JOHN CONWAY HARRISON concur.