NO. 91-132

IN THE SUPREME COURT OF THE STATE OF MONTANA

**1991**

JOE R. LEE and FLOIE N. LEE,

        Plaintiffs and Appellants,

    -vs-

O. M. SHAW, Personal Representative of
the Estate of Fred Pelzman, Deceased,

        Defendant and Respondent.

FILED

DEC 12 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Ninth Judicial District,
               In and for the County of Teton,
               The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Patrick F. Hooks; Hooks Law Firm, Townsend, Montana

      For Respondent:

      John P. Wuerthner; Wuerthner & Wuerthner, Great
      Falls, Montana
      Kenneth R. Olson; Baiz & Olson, Great Falls, Montana

Submitted on Briefs:  July 25, **1991**

Decided:  December 12, 1991

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Joe R. and Floie N. Lee appeal from the judgment of the District Court of the Ninth Judicial District, Teton County, which followed a bench trial in which the court concluded that the March 20, 1978 document was not an option but probably a right of refusal, and that because no notice of intent to sell was ever given to the plaintiffs, the right of first refusal did not come into effect. We affirm.

All parties concede that no notification of intent to sell was given by Fred Pelzman, or his estate, to the Lees. As a result, the sole issue is whether the March 20, 1978 document constituted an "option contract" or "a right of first refusal".

Joe R. Lee and Floie N. Lee (the Lees) moved to the Teton County area in 1977 and became acquainted with Fred Pelzman (Mr. Pelzman), owner of an 800-acre ranch near Choteau. Mr. Pelzman, 79 years old at the time, had suffered a stroke and was unable to operate the ranch. In September of 1977, Lees began operating the ranch under a work-share agreement. Subsequently they operated under written leases, with the last lease ending on December 31, 1985.

This action for specific performance concerns two documents entered into by the parties in 1978. As found by the District Court, on February 15, 1978, Mr. Pelzman signed an agreement with Lees giving them "first option" to purchase the ranch for fair market value "when it becomes available for sale". The agreement provided that "[o]ther offers being considered at that time must be

2

in writing, signed by the party making the offer and presented to Joe R. and Floie N. Lee for final consideration". The February 15, 1978, agreement was not recorded.

The District Court also found that on March 20, 1978, Mr. Pelzman and Lees entered into a second agreement, recorded in Teton County, giving Lees "first option" to purchase the ranch for $120,000 "upon or before my passing", and omitting the language about other offers. According to Joe Lee, he gave Mr. Pelzman $10.00 nominal consideration at the time the agreement was signed. The agreement contained the condition that "the option holders will reside and maintain the said property until time of sale." The agreement also stated that a "ledger of time and improvements will be kept for the purpose of reimbursement by the landowner." Lees testified that the reason for the second agreement was that they wanted credit for capital improvements on the ranch paid for with their own funds. Lees also testified that Joe R. Lee drafted and dictated the March 20, 1978 document and Floie N. Lee typed it, using the February 15, 1978 document as a guide.

Following Mr. Pelzman's death on May 18, 1986, Lees notified the attorney for the estate of their intent to exercise their option to purchase the ranch. Their offer was refused. On September 20, 1986, Lee's filed this action to compel specific performance of the March 10, 1978 agreement.

I

Did the March 20, 1978 document constitute an "option contract" or "a right of first refusal"?

3

Lees contend that the February 15, 1978, document comprised a "right of first refusal" and that the March 20, 1978, document constituted a valid "option" contract. The Pelzman estate maintains that the second document is not an option contract.

The District Court concluded that whether the second document was a right of first refusal or an option contract could not be determined from the face of the document because the wording was ambiguous. Employing the basic rule of construction that ambiguities are to be construed against the party who drafted the document, the District Court ruled that the document was a right of first refusal. The District Court reasoned that because neither Mr. Pelzman nor the Pelzman estate had ever given notice of intent to sell, the second document, as a right of first refusal, did not come into effect.

An option is a right acquired by contract by which the owner of property agrees with another person that he shall have the right to buy his property at a fixed price within a certain time. Miller v. Meredith (1967), 149 Mont. 125, 128-29, 423 P.2d 595, 597. The offer is continuing and irrevocable by the optionor, creating in the optionee a power to compel the owner to sell property at a stipulated price whether or not the owner wishes to sell. Klein v. Brodie (1975), 167 Mont. 47, 49, 534 P.2d 1251, 1252-53. When the optionee accepts the offer, a binding bilateral contract results which can be enforced by specific performance. Naylor v. Hall (1981), 201 Mont. 59, 67, 651 P.2d 1010, 1015.

A right of first refusal or "preemptive right" is closely

4

related to an option, but "very dissimilar in the legal relations of the parties . . . ." 1A Corbin on Contracts § 261, at **468 (1963).** A right of first refusal or preemptive right "does not give to the preemptioner the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre-emption, at the stipulated price." Tribble v. Reely (1976), **171** Mont. **201, 206,** 557 P.2d **813, 816** (emphasis added) (citation omitted).

Property subject to a preemptive right should adequately describe the property and the price must be stated or otherwise ascertainable. Klein, **167** Mont. at 50, 534 P.2d at **1253.** Often the agreement requires the property owner to offer the property to the party holding the preemptive right at the same price agreed upon by the third party. See, e.g., Tribble, 171 Mont. at 204, **557** P.2d at **815** (lease provided that "in the event of sale, the Lessees shall have the first refusal under terms similar to that offered any third party"); **1A** Corbin on Contracts § **261A,** at **136-37** (Supp. **1991).**

The language of the first agreement clearly indicated a right of first refusal, rather than an option contract:

> I, Fred Pelzman, Sr. agree to give Joe R. and Floie N. Lee first option to purchase property I own in the above Legal Description for fair market value when it becomes available for sale. Other offers being considered at that time must be in writing, signed by the party making the offer and presented to Joe R. and Floie N. Lee for final consideration. Upon notification of intent to sell, a period of **45** days will be allowed for payment. (Emphasis added).

5

Although this document contains the term "first option", courts have generally read the instrument as a whole to determine whether the parties intended an option or a right of first refusal. See Straley v. Osborne (Md. App. 1971), 278 A.2d 64, 69. By indicating that the property would be offered to Lees "when it becomes available for sale," by stipulating that the property would be sold at the current fair market value, and in supplying a legal description of the property, the first agreement satisfied the criteria for a right of first refusal.

The second agreement of March 20, 1978, provided in pertinent part:

> I, Fred Pelzman, Sr., agree to give Joe R. and Floie N. Lee first option to purchase property I own in the above Legal Description upon or before my passing for the sum of one hundred and twenty thousand dollars. It is agreed by the undersigned that the option holders will reside and maintain the said property until time of sale. A ledger of time and improvements will be kept for the purpose of reimbursement by the landowner. Upon notification of intent to sell, a period of 45 days will be allowed for payment.

Lees' attorney conceded that the insertion of the notification of intent to sell sentence at the end of the agreement admittedly created an ambiguity. The District Court concluded that the agreement was ambiguous on its face as it could be argued to be either an option or a right of first refusal and that because the Lees drafted the agreement, any ambiguity must be interpreted against them and in favor of the defendants. The rules of construction of a contract where ambiguity exists are summarized in Rumph v. Dale Edwards, Inc. (1979), 183 Mont. 359, 367, 600 P.2d 163, 168:

> An ambiguity exists when, taken as a whole, the contract's wording or phraseology is reasonably subject to two different interpretations. Where the terms of an agreement are uncertain and ambiguous, parol evidence is admissible to prove the interpretation meant by the parties. (Citation omitted.)

This agreement gives the legal description of the property and the purchase price which fulfills the first two requirements of both an option contract and a right of first refusal. In addition, the agreement sets a certain time, "upon or before my passing," for the offer to be held open as required by an option. In contrast, the last sentence requires the giving of a notification of intent to sell and grants a period of 45 days for payment. In analyzing this agreement, we conclude that in substance it may be interpreted as follows:

> (a) At any time during his lifetime, Mr. Pelzman could have notified the Lees of his intent to sell - at that point, the Lees had an immediate right to purchase the property for $120,000 less elements under the ledger which may be deductible, with payment to be made within a period of 45 days.
> (b) In a similar manner, if Mr. Pelzman failed to give any such notification of intent to sell during his lifetime, there still was the opportunity for the legal representative of his estate to give notification to the Lees of intent to sell effective upon the date of Mr. Pelzman's death. Again, had such notification of intent been given by the P.R. to the Lees, they had the right to purchase the property for the $120,000 less any credits as indicated by the agreement from the ledger, with payment to be made within 45 days from notification.

As a result, we agree with the determination by the District Court that this agreement was not an option which was entitled to be enforced. Since no notice was given to the Lees either before or at the time of Mr. Pelzman's death, and because 45 days elapsed following the death of Mr. Pelzman, we agree with the determination

7

of the District Court that any right of first refusal did not come into effect.

We hold that the District Court's conclusion that the second agreement constitutes a right of first refusal was correct for the above reasons.

Affirmed.

_____
                                   Justice

We Concur:

_____
          Chief Justice

_____

_____

_____

_____
               Justices

Justice John Conway Harrison, dissenting.

I dissent.  The issue in this case is whether the District Court erred in determining that the March 20, 1978, agreement was ambiguous on its face and constituted "a right of first refusal" rather than an option contract.

The Lees contend that the first agreement of February 15, 1978, comprised a "right of first refusal" and that the second agreement of March 20, 1978, was a valid "option" contract.  In the view of the District Court, whether the second agreement was a right of first refusal or an option contract could not be determined from the face of the document because the wording was ambiguous.  Employing the basic rule of construction that ambiguities are to be construed against the party who drafted the document, the District Court ruled that the document was a right of first refusal.  The District Court reasoned that since neither Mr. Pelzman nor the Pelzman estate had ever given notice of intent to sell, the second agreement, as a right of first refusal, did not come into effect.

An option is a right acquired by contract "by which the owner of property agrees with another person that he shall have the right to buy his property, at a fixed price, within a certain time." Miller v. Meredith (1967), 149 Mont. 125, 128-29, 423 P.2d 595, 597.  The offer is continuing and irrevocable by the optionor, creating in the optionee a power to compel the owner to sell

9

property at a stipulated price whether or not the owner wishes to sell. Klein v. Brodie (1975), 167 Mont. 47, 49, 534 P.2d 1251, 1252-53. When the optionee accepts the offer, a binding bilateral contract results which can be enforced by specific performance. Naylor v. Hall (1982), 201 Mont. 59, 67, 651 P.2d 1010, 1015.

A "right of first refusal" or "preemptive right" is closely related to an option, but "very dissimilar in the legal relations of the parties . . . ." 1A Corbin on Contracts § 261, at 468 (1963). A right of first refusal requires the owner of property, when he or she decides to sell, to offer the property to the person holding the preemptive right. If the holder of the preemptive right declines the offer to buy the property, the owner may sell to anyone. Tribble v. Reely (1976), 171 Mont. 201, 206, 557 P.2d 813, 816.

Property subject to a preemptive right should adequately describe the property and the price must be stated or otherwise ascertainable. Klein, 167 Mont. at 50, 534 P.2d at 1253. Often the agreement requires the property owner to offer the property to the party holding the preemptive right at the same price agreed upon by the third party. See, e.g., Tribble, 171 Mont. at 204, 557 P.2d at 815 (lease provided that "in the event of sale, the Lessees shall have the first refusal under terms similar to that offered any third party"); 1A Corbin on Contracts § 261A, at 136-37 (Supp. 1991).

I feel the language of the first agreement clearly indicated

a right of first refusal, rather than an option contract:

> I, Fred Pelzman, Sr. agree to give Joe R. and Floie N. Lee first option to purchase property I own in the above Legal Description <u>for fair market value when it becomes available for sale.  other offers being considered at that time must be in writing, signed by the party making the offer and presented to Joe **R**. and Floie N. **Lee** for final consideration.</u>  Upon notification of intent to sell, a period of **45** days will be allowed for payment. [Emphasis added.]

By indicating that the property would be offered to the Lees "when it becomes available for sale," by stipulating that the property would be sold at the current fair market value, and in supplying a legal description of the property, the first agreement satisfied the criteria for a right of first refusal.

> The second agreement of March 20, 1978, provided:

> I, Fred Pelzman, Sr., agree to give Joe R. and Floie N. Lee first option to purchase property I own in the above Legal Description upon or before my passing for the sum of one hundred and twenty thousand dollars.  It is agreed by the undersigned that the option holders will reside and maintain the said property until time of sale.  **A** ledger of time and improvements will be kept for the purpose of reimbursement by the landowner.  Upon notification of intent to sell, a period of 45 days will be allowed for payment.

The second agreement fulfilled the first two requirements of both an option contract and a right of first refusal in that a legal description of the property was given and the price of $120,000 was fixed.  In addition, the agreement revealed a certain time, "upon or before my passing," for the offer to be held open as required by an option.

Although the second agreement meets the criteria for an option, the use of the term "first option" and the inclusion of the

11

sentence requiring a period of 45 days after notification for payment creates an ambiguity. Mr. and Mrs. Lee each testified that the sentence requiring a 45-day waiting period was inadvertently included in the second agreement by Mrs. Lee. An ambiguity exists when the wording of the contract is subject to two different interpretations. Parol evidence is admissible to prove the interpretation the parties intended. Proctor v. Werk (1986), 220 Mont. 246, 248, 714 P.2d 171, 172. "[I]n the construction of contracts, the courts may look not only to the language employed but to the subject matter and the surrounding circumstances and may avail themselves of the same light which the parties possessed when the contract was made." Morning Star Enterprises v. R.H. Grover (1991), 247 Mont. 105, 111, 805 P.2d 553, 557.

When confronted with the term "first option," courts have generally read the instrument as a whole to determine whether the parties intended an option or a right of first refusal. See Straley v. Osborne (Md. App. 1971), 278 A.2d 64, 69; but see Blau-Par Corp. v. Reliance Chemical Corp. (N.Y. App. Div. 3 1991), 565 N.Y.S.2d 910 ("first option" constitutes option; otherwise, adjective "first" rendered meaningless). For example, in Steen v. Rustad (1957), 132 Mont. 96, 313 P.2d 1014, this Court, relying on the intent of the parties as revealed by the "light of the entire instrument," interpreted the words "first option to buy" as giving the holder an option rather than a right of first refusal. Steen, 132 Mont. at 102, 313 P.2d at 1018.

According to Pruner v. Brown (Va. 1976), 223 S.E.2d 890, although courts are evenly divided, the better view when the terms of the lease or agreement specify the purchase price and legal description of the property is that an absolute option is created by use of the word "first" with "right, option, or privilege." Pruner, 223 S.E.2d at 892. Generally, the interpretation of the instrument as an option is more likely when the words "first option" are utilized than when the expressions "first privilege" or "first right" are employed. 1A Corbin on Contracts § 261A, at **486-89**.

Instructive in interpreting the second agreement in the context of surrounding circumstances is a comparison with the terms of the first agreement, drafted about a month before the second agreement. In the second agreement we note the addition of a specific amount as the sale price, which according to Pruner is an indication of an option, rather than a right of first refusal. Moreover, had the parties intended the second agreement as a right of first refusal, it would seem reasonable that the parties would have included the identical phrase, "when it becomes available for sale," to establish their intent to negotiate a right of first refusal. Instead, this phrase was omitted. Similarly, omission in the second agreement of the sentence requiring other offers to be presented to the Lees indicates that the parties did not intend the second agreement to comprise a right of first refusal.

Even though construction of the second agreement as an option

is warranted, the contract contains a unique clause about the duration of the agreement, giving the Lees "first option to purchase property I own in the above Legal Description upon or before my passing." As I read this passage, whether the second agreement is deemed a right of first refusal or an option, Mr. Pelzman's death constituted an event giving the Lees the right to purchase the 800-acre ranch.

Taking into consideration the variations in wording of the first and second agreements and the phrasing of the second agreement, I would hold that upon the death of Mr. Pelzman, the Lees had the right to buy the 800-acre ranch property at the agreed upon price. The estate presents a number of arguments regarding contract and estate law to support its position. I will briefly address two of the more significant theories.

The estate asserts that the Lees are not entitled to specific performance because they failed to tender the purchase price and breached the option by failing to submit a ledger for reimbursement purposes as required by the contract. The second agreement stated that 45 days was allowed for payment after notification. The Lees promptly attempted to exercise the option on June 5, 1986, two and a half weeks after Mr. Pelzman's death, by a letter to Mr. Pelzman's attorney. The attorney refused to recognize the validity of the option and denied the Lees' second request to exercise their option to buy the property later that same month. It is my view that in light of the adamant refusal to recognize the Lees' right

to buy the property, neither the Lees' failure to tender the purchase price nor their failure to present a ledger affects their right to specific performance since such actions on the Lees' part would have been futile.

The estate also contends the second agreement failed to recite consideration for the option. Consideration is "[a]ny benefit conferred or agreed to be conferred upon the promisor by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person . . . as an inducement to the promisor. . . ." Section 28-2-801, MCA. Mr. Lee testified that he gave Mr. Pelzman $10.00 as consideration for the option. We have held that nominal consideration is sufficient to create a valid contract and allow the equitable remedy of specific performance. Keaster v. Bozik (1981), 191 Mont. 293, 299, 623 P.2d 1376, 1380 (five dollars sufficient consideration). Although the $10.00 consideration was not recited in the contract as is preferable, the Lees' promise in the second agreement to reside on and maintain the property until time of sale, as a detriment suffered by the Lees and a benefit to Mr. Pelzman, comprised adequate consideration. See Naylor v. Hall (1982), 201 Mont. 59, 651 P.2d 1010. In addition, "[a] written instrument is presumptive evidence of a consideration." Section 28-2-804, MCA.

The fact that some terms in the option contract were not specifically expressed does not render it unenforceable. Absolute certainty in every detail is not a prerequisite for specific

15

performance.  <u>Keaster</u>, 191 Mont. at 302, 623 P.2d at 1381.  I would hold that the Lees provided sufficient consideration for the option contract.

The judgment of the District Court should be reversed.

_John Conway Harrison_
Justice

Justice Terry N. Trieweiler joins in the foregoing dissent of Justice John C. Harrison.

_Terry Trieweiler_
Justice

December 12, 1991

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Patrick F. Hooks
HOOKS & BUDEWITZ
P.O. Box 1289
Townsend. MT  59644

John P. Wuerthner
WUERTHNER & WUERTHNER
P.O. Box 2503
Great Falls, MT  59403

Kenneth R. Olson
BAIZ & OLSON
Suite 316, 600 Central Plaza
Great Falls, MT  59401


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy