No.  93-587

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

KENNETH H. WILLSON,

       Plaintiff and Appellant,

-v-

HELEN M. COLLINS TERRY, and
FLOYD TERRY,

       Defendants and Respondents.

FILED

MAY 2 0 1994

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Twelfth Judicial District,
In and for the County of Chouteau,
The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

       Robert C. Melcher, Billings, Montana

       For Respondents:

       Gorham E. Swanberg, Ray F.Koby, Swanberg, Koby &
       Swanberg, Great Falls, Montana

Submitted on Briefs:  March 24, 1994

Decided:  May 20, 1994

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from the dismissal of an action in the Twelfth Judicial District Court of Chouteau County. We affirm.

We consider the following issue on appeal:

Did the District Court err when it granted defendants' motion to dismiss based upon the court's conclusion that the option to purchase within the original lease agreement ended at the expiration of the written lease term?

Appellant Kenneth Willson (Willson) leased land from respondent Helen Collins Terry (Terry) for the purpose of farming. The original lease was written and was signed on or about February 8, 1985 and lasted for three years until 1988. The lease provided: "This FARM LEASE shall be for a period of three (3) years, or longer if mutually agreed to by both parties."

After the expiration of the written lease, Willson continued on the property following yearly oral agreements between the parties. In January of 1990, respondents offered to sell the farm to Willson for $325 per acre. Willson believed this price to be inflated and informed the Terrys that he would not buy it at this price, but would like to buy it at a more representative price. Willson claims that Mr. Terry agreed that he would notify him if they lowered the price. However, in July of 1990, the Terrys sold the farm to a third party for $265 per acre while Willson was in possession of the land and without notifying Willson that the price had been dropped.

Willson filed a complaint in Chouteau County alleging breach

2

of contract, breach of implied covenant of good faith and fair dealing, failure to disclose, negligent misrepresentation and breach of promise. Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) M.R.Civ.P. The court granted dismissal on October 19, 1993, finding that the renewal clause in the written lease was inadequate to continue the option to buy beyond the original written lease term.

Did the District Court err when it granted defendants' motion to dismiss based upon the court's conclusion that the option to purchase within the original lease agreement ended at the expiration of the written lease term?

Willson argues that in making its determination to dismiss, the court based its decision on an issue of law not placed in contention by the parties. Willson claims that the court's interjection of legal theory without providing him an opportunity to respond to the theory denies him due process. Further, Willson argues that he was not a holdover tenant as determined by the court, but was instead a lessee in possession of the land by virtue of an oral agreement. Because he was not a holdover tenant, Willson contends that he was entitled to a carryover of the option to purchase from the original written lease. Willson further argues that his possession of the land entitles him to an automatic renewal of his lease on the same terms as the original lease pursuant to § 70-26-204, MCA.

Terry argues that the issue of the renewal clause and its viability was thoroughly discussed by both parties and that the

3

court did not interject a new issue. Further, Terry contends that Willson incorrectly states the problem when he argues that the court acted improperly to characterize him as a holdover tenant. According to Terry, the court's determination springs from established Montana law stating that in order for a renewal of an option to purchase to continue beyond the written lease, that clause must be specific; the clause in question here was not specific and the court did not err in so finding.

This Court will only affirm a district court's dismissal of an action if it finds that the plaintiff is not entitled to relief under any set of facts which could be proven in support of the claim. King v. State (1993), 259 Mont. 393, 856 P.2d 954. Therefore, the District Court can only be affirmed if Willson could not recover under any set of circumstances.

Willson's argument that the court decided the action based upon a new issue is not well taken. Willson cites Nentwig v. United Industry (1992), 256 Mont. 134, 845 P.2d 99, for the proposition that the District Court was required to allow him an opportunity to address the new issue. However, we do not believe that the issue of whether the renewal clause was void for vagueness as so described by the court was a new issue. Such a consideration was implied within the context of the pertinent legal question.

The record indicates that one of the main issues briefed by counsel concerned whether the written lease was renewed together with all of its terms. Because this is the fundamental legal question the court had to answer, it was within its jurisdiction to

4

consider all relevant law pertaining to resolution of the question and interpretation of the original written lease. Thus, the court did not err by citing a relevant case, Riis v. Day (1980), 188 Mont. 253, 613 P.2d 696, which was not cited by either counsel and which dealt with the void for vagueness theory.

The written instrument interpreted by the District Court and which we must also review is a written lease executed in 1985. Willson argues that this lease contains an "option to purchase." It reads:

> Tenant shall be granted an <u>option to purchase</u> said property, in the event it should be offered for sale <u>during this lease period</u>, at the same price and terms as may be offered by a bona fide prospective purchaser . . . . (Emphasis added.)

Despite the use of the word "option" in this sentence, the drafters intent must be determined from the entire instrument itself. Lee v. Shaw (1992), 251 Mont. 118, 822 P.2d 1061. Having considered the entire contract, we determine that the above sentence indicates Willson had a "right of first refusal" as opposed to an option contract.

The legal distinction is very important. An option is a right acquired by which an owner of property agrees with another person that he shall have the right to buy the property at a fixed price within a certain time. <u>Lee</u>, 251 Mont. at 121, 822 P.2d at 1063. The wording of the contract before us does not indicate a fixed price, although it does indicate a fixed term--during this lease period--which is three years.

A right of first refusal means that when the owners decide to

5

sell the property, the person named has the first chance to buy it.

> A right of first refusal or preemptive right does not give to the preemptioner the power to compel an unwilling owner to sell; it merely requires the owner, <u>when and if he decides to sell</u>, to offer the property first to the person entitled to the preemption. . . (Emphasis in original.)

<u>Lee</u>, 251 Mont. at 121, 822 P.2d at 1063. The wording in the lease states "in the event that it should be offered for sale." This indicates that no decision to sell has been made; the intent of the drafters, therefore, was to create a right of first refusal and not an option contract.

> The written lease also contains the disputed "renewal" clause:

> This FARM LEASE shall be for a period of three (3) years, or longer <u>if mutually agreed to by both parties.</u> (Emphasis added.)

The District Court found that this clause was void for vagueness. Thus, the court reasoned that any agreement beyond the expiration of the original written lease was a new agreement between the parties and did not represent an extension of the original written lease with its attendant ambiguous renewal clause.

Where vagueness or imprecision exist in a contract, the contract as a whole must be considered. Barrett v. Ballard (1980), 191 Mont. 39, 622 P.2d 180. The language of the above alleged renewal clause is made totally nebulous because of the word "if." We agree with the District Court that neither this clause, nor any other language in the written lease, can renew the lease unless more specific language is used; the lease itself only mentions that such a course of action is possible if the parties agree to it. The clause above does nothing but alert the parties to the

6

possibility that any renewal beyond the three year term of the written lease will require a future separate agreement.

We know from the record that an oral yearly agreement of some kind existed, but such agreement existed totally apart from any renewal of the original lease. There is nothing in the record to indicate that the year-to-year tenancy created by oral agreement and under which Willson stayed upon the land contained a right of first refusal.

Willson cites Nevala v. McKay (1978), 178 Mont. 327, 583 P.2d 1065, and Rumph v. Dale Edwards, Inc. (1979), 183 Mont. 359, 600 P.2d 163, for the proposition that when a lease is extended, an option to purchase is likewise extended. These cases do not bolster his argument. Rumph involved a written extension of a lease. The document extending the lease, a rider to the original lease, contained specific terms and the following language: "That the lessee, Hubert C. Rumph and/or Margery Rumph has the option to renew this lease as well as the option to buy." Rumph, 183 Mont. at 363, 600 P.2d at 165. The rider provided a specific provision for extension of the lease and renewal of the option to buy. It is because of the explicitness of the rider that we affirmed the district court stating that the option to purchase was continued. Rumph, 183 Mont. at 370, 600 P.2d at 169. Here, no such specific written rider exists which continues the right of first refusal.

Unlike the present case, the original lease in Nevala contained a specific clause extending the lease by "written" one-year lease extensions. The original lease ended on October 4,

7

1971. Instead of executing the written one-year extensions, the parties wrote a three-year handwritten extension to December 1, 1974 by writing on the back of the original lease. After 1974, the Nevalas stayed on the farm until 1975 with no written lease extensions.

During September of 1975, the owner of the ranch told Nevala that he was going to sell the ranch. Before Nevala could obtain financing, the owner called and said that he would retain the ranch. However, the owner sold the ranch to a third party. We held that no right of first refusal had been passed on because the parties had "modified" the original lease by writing on the back of it instead of adhering to the original lease provision of one-year "written" extensions. Nevala, 178 Mont. at 331, 583 P.2d at 1069. This modification, occurring without inclusion of a written option or right of first refusal, effectively ended the terms under which the original lease operated, and therefore, ended the original option to buy.

While the present case does not present a situation in which the original written lease was "modified" it does present a similar situation in which the terms of the written lease ended. In Nevala, the written lease was modified and then expired. In the present case, the written lease was not renewed because the renewal clause was inadequate to renew. In either case, the terms of the written lease ended with the term expiration of the written lease.

Another difference between Nevala and the present case is that the tenant in Nevala became a holdover tenant when the period of

8

the modified lease under which the tenant lived, ended. Here, we have a situation in which the tenants lived on the land with a yearly oral agreement. Willson argues that he was a lessee in possession as opposed to a holdover tenant. The distinction is immaterial for the purposes of this opinion. Given either nomenclature, Willson still has not retained a right of first refusal springing from the written lease.

Finally, Willson argues that § 70-26-204, MCA, gives him an automatic lease renewal by virtue of his possession of the land:

> **Renewal of lease by lessee's continued possession.** If a lessee of real property leased under an arrangement not governed by chapter 24 of this title remains in possession thereof after the expiration of the hiring and the lessor accepts a rent from him, the parties are presumed to have renewed the hiring <u>on the same terms and for the same time</u>, not exceeding 1 month when the rent is payable monthly, <u>or in any case 1 year</u>. (Emphasis added.)

Section 70-26-204, MCA. The record reveals that Willson was on the land several years past the expiration of the term of the written lease. If the written lease expired in 1988, then according to this statute, any oral agreement extending the "hiring" or lease could only last until 1989.

We construed the forerunner of the aforementioned statute, that consists of identical wording, in Roseneau Foods, Inc. v. Coleman (1962), 140 Mont. 572, 374 P.2d 87. We stated there that:

> As pointed out, section 42-203 as applied here created a tenancy for one year. Section 42-205 applied with section 42-203 created a presumption that the tenancy was renewed on a year to year basis. While it is true that section 42-205 presumes a renewal on the basis of a monthly rental period, it is also clear that the section provides that <u>the implied renewal period may be presumed to be for a year, but not in excess of that period.</u> (Emphasis added.)

9

Roseneau, 140 Mont. at 578, 374 P.2d at 90. Therefore, any oral agreement made after a renewal of one year, cannot be presumed to contain all of the terms of the initial written agreement. We conclude that an oral agreement made after the first year's oral renewal pursuant to § 70-26-204, MCA, constitutes a brand new agreement and must contain its own terms. The plain words of the statute indicate this. Therefore, this statute does not support Willson's argument.

We finally conclude that the right of first refusal was not renewed pursuant to the renewal clause in the original written lease because that renewal clause was inadequate to renew the written lease. Therefore, we hold that the District Court did not err in dismissing the action based upon the court's conclusion that the right of first refusal (option to purchase) located in the original lease agreement ended at the conclusion of the written lease.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

10

May 20, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Robert C. Melcher
Attorney at Law
P.O. Box 2315
Billings, MT 59103

Gorham E. Swanberg, Esq.
Swanberg, Koby & Swanberg
P.O. Box 2567
Great Falls, MT 59403

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _D. Gallagher_
    Deputy