65 F.3d 171
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Richard WILLIS and Heddy Willis, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 94-3718.
 United States Court of Appeals, Seventh Circuit.
 Argued May 8, 1995.
Decided Aug. 25, 1995.
 
 Before POSNER, Chief Judge, and EASTERBROOK and KANNE, Circuit Judges.
 
 ORDER
 
 1
 The Willises appeal the district court's grant of a motion to dismiss for lack of subject matter jurisdiction. The court dismissed the case based on the Willises' failure to meet the statute of limitations. Willis argues that the statute of limitations is an affirmative defense rather than a jurisdictional prerequisite. Because we decide that, in this instance, the distinction makes no difference, we affirm the dismissal of their case.
 
 
 2
 Richard Willis, a veteran of the United States Air Force, has suffered from schizophrenia since the mid-1960's. To control his disease, Veteran's Administration doctors at three hospitals prescribed a number of medications. Due to prolonged use of the drugs, Richard developed tardive dyskinesia, a neural disorder which causes involuntary movements of the fact, mouth, tongue, eyes and hands. On January 20, 1989, Richard met with Dr. Victor Mintek, a doctor at the VA hospital in Peoria, Illinois. Dr. Mintek noted that Richard had severe involuntary movements which he related to tardive dyskinesia.
 
 
 3
 The government claims that, at this first meeting, Dr. Mintek told Richard that his involuntary movements were symptoms of tardive dyskinesia and that his prolonged use of the neuroleptic medications caused the disease. The Willises, on the other hand, claim that Dr. Mintek did not tell Richard that his involuntary movements were related to his medications until October 23, 1990, over a year and a half after Dr. Mintek began treating Richard.
 
 
 4
 The date that the Willises discovered that Richard's involuntary movements were caused by the medications is important because the FTCA imposes a statute of limitations of two years. 28 U.S.C. Sec. 2401(b) states:
 
 
 5
 A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues....
 
 
 6
 Richard filed his administrative complaint with the VA on November 27, 1991. Therefore, if his claim accrued before November 27, 1989, it was untimely.
 
 
 7
 The defendant filed a motion under Federal Rule of Civil Procedure 12(b)(1), claiming that, because Richard failed to timely file an administrative complaint, the district court lacked jurisdiction over the case. See Barnhart v. United States, 884 F.2d 295, 296 (7th Cir.1989). Plaintiffs, relying on Irwin v. Veterans Admin., 498 U.S. 89, 111 S.Ct. 453 (1990), and Schmidt v. United States, 901 F.2d 680 (8th Cir.1990), responded that the statute of limitations is not jurisdictional. In Irwin, a Title VII case, the Supreme Court held that there is a presumption in favor of allowing plaintiffs to equitably modify statutes of limitations in actions against the federal government. The Eighth Circuit, in Schmidt, held that the necessary implication of the Court's holding in Irwin was that statutes of limitations are no longer jurisdictional prerequisites in cases against the federal government. We express no opinion on whether Irwin transformed the statute of limitations from a jurisdictional prerequisite to an affirmative defense, because regardless, the Willises did not meet the statute of limitations.
 
 
 8
 Willis argues that, even if the statute of limitations is an affirmative defense, he did not discover his injury until October 1990, making his administrative claim timely. Under the "discovery rule," a plaintiff's claim accrues when he knows or should have known that he was injured and by whom. Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir.1990). Therefore, the district court held a hearing to determine when the Willises discovered Richard's injury. After hearing testimony from Richard, Heddy and Dr. Mintek the district court found that Richard discovered his injury on January 20, 1989, at his first meeting with Dr. Mintek. We will disturb the district court's finding of fact, concerning when Richard knew of his injury, only if clearly erroneous. Equal Employment Opportunity Comm'n v. Laborer's Int'l Union of N. Am., 49 F.3d 304, 306 (7th Cir.1995). Credibility determinations are especially the province of the district court. United States v. Woody, 55 F.3d 1257, 1265 (7th Cir.1995).
 
 
 9
 Dr. Mintek testified at the hearing that at the initial meeting, he told Richard that the cause of the tardive dyskinesia was the prolonged use of the drugs that had been prescribed by the VA doctors. Dr. Mintek immediately began reducing the levels of the drugs to "soften" Richard's involuntary movements, which is borne out by his progress notes. Dr. Mintek further testified that at almost monthly intervals, he and Richard discussed whether these reductions were alleviating the symptoms of Richard's tardive dyskinesia.
 
 
 10
 In contrast to Dr. Mintek's clear and credible testimony, the district court found Richard's testimony to be marked by "confusion, memory loss, and internal contradictions," and found Heddy's testimony fraught with contradictions and therefore worth little weight. Richard initially testified that Dr. Mintek did not explain the cause of his involuntary movements until October 1990. In fact, he testified that the October 1990 meeting was the first time he had even heard of tardive dyskinesia. But on cross examination, Richard testified that Dr. Mintek told him that he had tardive dyskinesia in 1989 and that the October 1990 meeting was the first time that Dr. Mintek had explained the cause in depth.
 
 
 11
 On direct examination, Heddy Willis testified that she did not know that Richard's tardive dyskinesia was caused by the medications until Richard told her so after his meeting with Dr. Mintek in October 1990. However, this testimony contradicted her deposition testimony, where she stated that Dr. Mintek had told her about the tardive dyskinesia and its cause during a telephone conversation in April of 1989, and the district court therefore discredited her testimony. Moreover, Dr. Mintek testified that he telephoned Heddy Willis on April 20, 1989, and that, during this conversation, they spoke about Richard's symptoms and new treatment. Based on the testimony it heard and the exhibits and depositions it reviewed, the district court found that the plaintiffs failed to timely file their administrative complaint. We agree.
 
 
 12
 Appellants nevertheless argue that because the district court considered the statute of limitations a jurisdictional prerequisite, they bore the burden of proof, whereas if it had viewed the statute of limitations as an affirmative defense, the defendant would bear the burden of proof. The Willises claim that this shift could have made a difference in the district court's outcome and that therefore we should remand. But this is not a close case, in which the burden of proof could conceivably make a difference. See Cates v. Morgan Portable Bldg. Corp., 780 F.2d 683, 688 (7th Cir.1985) ("Burden of proof is important when the evidence is in equipoise ... [and] should determine the outcome only when decision is balanced on the razor's edge.") The district court disbelieved the Willises and found the testimony of Dr. Mintek clear and credible. The burden of proof played no part in the resolution of this issue. The judgment of the district court is AFFIRMED.