**Frank VELARDE and Lydia Velarde, Plaintiffs,**

v.

**UNITED STATES of America, Department of Agriculture, Farmers Home Administration, Defendants.**

No. Civ.A. 95–WM–1806.

United States District Court, D. Colorado.

Jan. 22, 1998.

Richard T. Wehrle, Denver, CO, for Plaintiffs.

Robert D. Clark, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

MILLER, District Judge.

This matter is before me on the parties' cross motions for summary judgment. The parties agree that no material fact remains in dispute. For the reasons set forth below, both motions are granted in part and denied in part.

## BACKGROUND

Plaintiffs are husband and wife. Defendant is the United States of America, acting through the Farm Service Agency, formerly known as the Farmers Home Loan Administration ("FmHA"). Plaintiffs owned agricultural land in Las Animas County, Colorado (the "Ranch"), which, as a result of their borrowing, was encumbered by a first deed of trust for the benefit of the Federal Land Bank and a second deed of trust for the benefit of the defendant in 1980. In 1983, after plaintiffs were in default on both their obligations, the Federal Land Bank foreclosed and defendant redeemed the ranch, adding the cost of redemption to plaintiffs' loan balance. An extensive history of litigation followed. (This is the third or fourth case in a series of legal disputes arising out of defendant's acquisition of the Ranch by reason of plaintiffs' defaults).

In 1984, plaintiffs resisted defendant's effort to evict them from the Ranch and, instead, applied to defendant for a loan to finance a repurchase the ranch in January 1985. Defendant rejected the loan application because it did not comply with applicable regulations. Plaintiffs appealed the rejection to the United States Claims Court, but the case was dismissed for lack of jurisdiction in 1989 (*Velarde v. The United States,* U.S. Claims Ct., No. 785–87C).

Defendant then brought an action in ejectment in this court and plaintiffs counterclaimed alleging wrongful denial of their loan application. Plaintiffs counterclaims were dismissed on summary judgment, and plaintiffs were ordered evicted from the Ranch in late 1991. *United States v. Velarde,* Case No. 90–B–1369, (D.Colo.1991). The District Court judgment was upheld on appeal. *United States v. Velarde,* 945 F.2d 412, 1991 WL 191068 (10th Cir.1991).[1]

In 1995, defendant advertised the Ranch for sale. Plaintiffs did not apply or bid to purchase the Ranch; instead they initiated this action to prevent its sale, claiming that they were deprived of certain rights mandated by statute, namely, rights to notice of, and preference in, the sale of the Ranch. They also claim that, following defendant's acquisition of title to the Ranch in 1984, defendant failed to provide plaintiffs with adequate notice of their rights established by law to reacquire ten acres of the Ranch as "Home-

---

**1.** The United States also obtained a Judgment and Decree of Foreclosure of the Ranch in Case No. 90–B–1369 on August 16, 1991, which awarded the government a $79,430.65 judgment against plaintiffs.

stead Protection property" and to participate in a "leaseback/buyback" program.

Accordingly, this case raises two issues in the context of agricultural lending by the government:

1. Is a claim that a government agency failed to provide adequate notice of statutory rights barred by the statute of limitations if filed more than six years after the agency gave notice?

2. Does a defaulting government borrower, whose land was acquired by the government through foreclosure in 1984, nevertheless still have certain rights upon the ultimate sale of the land by the government in 1995?

## JURISDICTION

Jurisdiction over this action is proper pursuant to 28 U.S.C. § 1346 and the Administrative Procedure Act, 5 U.S.C. §§ 701–706 ("APA"). In particular, I am asked to review the defendant agency's action to see if I should set aside any unlawful action and/or compel any action unlawfully withheld. 5 U.S.C. § 706.

## STANDARD OF REVIEW

Summary Judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). By their cross motions for summary judgment and their statements to the court, the parties have stipulated there is not any dispute of material fact and this matter should be decided by me as matter of law.

## STATUTORY FRAMEWORK

Defendant is the agency charged with administering the Agricultural Credit Act, 7 U.S.C. § 1921 et seq., a federal loan program designed to help farmers finance their property. Plaintiffs' loan from the defendant was subject to that act and the accompanying regulations. The act has undergone a series of changes over the time period relevant to this litigation, and analysis of plaintiffs' claims is facilitated by an overview of those amendments.

### A. The 1985 Act

Congress enacted The Farm Credit Amendments Act of 1985 ("1985 Act") in response to a financial crisis in the farming industry. "The act gave certain rights to financially distressed FmHA borrowers who would otherwise be unable to pay their mortgages and, consequently, risked losing their farms." United States v. Rode Corp., 996 F.2d 174, 175 (7th Cir.1993). The 1985 act is codified at 7 U.S.C. §§ 1985 and 2000.

In 1986, § 1985 required defendant to sell or lease farmland which it held in inventory. Pursuant to section 1985(e)(3)(B), defendant promulgated regulations which gave the previous owner of a farm acquired by defendant first priority in leasing the farm with or without an option to purchase, if certain requirements were met. 7 C.F.R. § 1955.66(c)(2) (1986). The County Supervisor was to "notify the previous owner ..., by certified letter, return receipt requested, of the availability of the property for lease as soon as it [became] available for lease." Id. The previous owner then had 30 days to give notice of his or her interest in leasing the property. Id.

Section 2000, as originally enacted on December 23, 1985, provided "homestead protection" rights. The previous owner of a farm that had been acquired by defendant had the opportunity to lease a homestead portion of the farm for a period of 3–5 years, with an option to purchase at the end of the lease term. 7 U.S.C. § 2001(b)(3) (1986). Defendant promulgated regulations setting forth the terms and conditions for exercising homestead protection rights (7 C.F.R. § 1955.73 (1987)), as well as the notice required to be given to eligible farmers. 7 C.F.R. § 1955.18(h) (1987).

### B. The 1987 Act

In 1987, Congress amended 7 U.S.C. §§ 1985 and 2000 further enhancing the rights of eligible farmers to protect their interests. United States v. Rode Corp., 996 F.2d at 176. Most significantly here, those amendments included a preference scheme for the benefit of the "immediate previous borrower-owner" in case of "sale or lease,

with option to purchase, of property ... foreclosed, redeemed, or otherwise acquired by the secretary." 7 U.S.C. § 1985(e) (1988). In addition, § 1985 was amended to require "written notice reasonably calculated to inform the immediate previous owner" if defendant determined that suitable farmland was available for disposition under § 1985(e). 7 U.S.C. § 1985(e)(6) (1988).

For property that already had been acquired through foreclosure on January 6, 1988, the amendments required defendant to "make a good faith effort to notify the borrower of homestead protection rights within 60 days" of January 6, 1988. 7 U.S.C. § 2000(c)(1)(6) (1988). Participation in the homestead protection program for such borrowers was limited to those who applied within 90 days of January 6, 1988, 7 U.S.C. § 2000(c)(1)(A) (1988).

### STIPULATED FACTS [2]

Plaintiffs are husband and wife and have lived together continuously at all times relevant to this action. As described above, defendant acquired the Ranch in 1984 as the result of plaintiffs' defaults. On May 19, 1986, defendant mailed a notice (Exhibit D–19) to Mr. Velarde advising him that

> The Farmers Home Administration (FmHA) has acquired real property that may be available for you to lease, with an option to purchase, under certain conditions set out in FmHA dwelling retention regulations. If you would like to be considered for dwelling retention, please contact this office within 30 days of the date of this letter.

Two days later, a second letter (Exhibit D–21) was mailed to Mr. Velarde which read as follows:

> In a recent letter, we advised you of our dwelling retention program. This letter was to include our program to lease back

the property to you. The statement was left out by mistake.

> In order to participate in this program, you must contact this office within thirty days.

Plaintiffs, through their attorney at the time, responded to the letters within thirty days of their mailing.[3] The attorney requested details regarding the programs mentioned in the letters. Defendant responded stating that the complexity of the program prevented it from sending details by mail and that plaintiffs would have to come to defendant's office to get further details. Plaintiffs never went to the office for more information, but their attorney made another request for information, which defendant denied by letter of June 11, 1986 (Exhibit D–25). Plaintiffs never applied to participate in those programs.

On December 30, 1988, Mr. Velarde signed an acknowledgment (Exhibit D–47) that he had received notice explaining various programs available to help him keep the Ranch. Defendant then informed Mr. Velarde by certified letter of March 8, 1989 (Exhibit D–48) that

> The time for submitting ... your application for Farmers Home Administration (FmHA) primary and preservation loan servicing actions has expired. You were contacted in writing on January 20, 1989[,] informing you of your incomplete application and requesting the necessary information to proceed with the analysis. The information was not submitted.[4]

In June 1995, defendant advertised the Ranch for sale by running the following advertisement in various local newspapers:

> Notice is given that the United States of America, acting through the Rural Economic and Community Development (RECD), (formerly FmHA), will sell by regular sale the [Ranch] ....
>
> ....

---

**2.** The parties filed Stipulated Facts on May 27, 1997, containing 51 distinct factual statements.

**3.** Although the letters were addressed to Mr. Velarde alone, the plaintiffs' attorney at the time responded to the letters on behalf of both plaintiffs. See Exhibits D–23, D–24 and D–26. There-

fore, by necessary implication, Mrs. Velarde had notice of the letters as well.

**4.** Mrs. Velarde signed the return receipt card for the December 30, 1988 acknowledgment and the March 8, 1989 notification.

The property is offered for sale to operators of not larger than a family-sized farm with priority given to applicants in the following order:

1. Socially disadvantaged beginning farmers or ranchers who are eligible for Farm Ownership Guarantee assistance.

2. Beginning farmers or ranchers WHO [sic] are eligible for Farm Ownership Guarantee assistance.

3. Socially disadvantaged operators of not larger than family sized farm [sic] who meet FHA eligibility requirements for a Farm Ownership Guarantee Loan.

4. Operators of not larger than family-sized farms who meet FmHA eligibility requirements for Farm Ownership Guarantee Loans.

5. Operators of not larger than family-sized farms who are not in need of FmHA credit at eligible rates and terms. This would include cash offers.

. . . .

The current established sales price is $185,000.00. No offers more or less than this price will be accepted.

The maximum amount of FmHA Guarantee credit is $185,000.00 for eligible applicants. Ineligible applicants would only be considered if no eligible applicants are found. . . .

Plaintiffs were given no notice of any preferential right they may have as the "immediate previous borrower-owner[s]" under 7 U.S.C. § 1985(e). In fact, plaintiffs only learned that the Ranch was being sold through the newspaper advertisements. Eventually, defendant agreed on May 29, 1996, to sell the property for the established price of $185,000 to Mary Mayfield ("Mayfield"), a person whom defendant considered a qualified buyer under its procedures, but closing will not occur unless this litigation is resolved in defendant's favor.

**5.** Plaintiffs argue that defendant waived the statute of limitations as a defense by not asserting it in the Pretrial Order. I reject that argument for two reasons. First, the statute of limitations in 28 U.S.C. § 2401 is jurisdictional in nature. *See Willis v. United States*, 879 F.Supp. 889, 890–92 (C.D.Ill.1994), *aff'd* 65 F.3d 171, 1995 WL

## LEGAL ANALYSIS AND CONCLUSIONS

A. *Plaintiffs' claims that defendant did not provide them with proper notice of their leaseback/buyback and Homestead Protection rights.*

▪ To the extent that plaintiffs' claims are based on inadequate notice of rights available under the 1985 Act, those claims accrued when the notice was given and when defendant denied plaintiffs' request for additional information by mail in 1986. Where, as here, no formal review procedures exist, the cause of action accrues when the complained of agency action occurs, i.e. 1986. *Impro Products, Inc. v. Block*, 722 F.2d 845, 850–51 (D.C.Cir.1983). Since these claims were not filed until 1995, they are barred by the six-year statute of limitations applicable to actions under the APA. 28 U.S.C. § 2401(a); *Chemical Weapons Working Group v. U.S. Department of the Army*, 96–4166 (10th Cir.1997) (111 F.3d 1485).[5]

▪ With respect to plaintiffs' claims that they were not given adequate notice of homestead and leaseback rights under the 1987 Act, Mr. Velarde's cause of action accrued at least on the date he received the March 8, 1989 letter advising him that their time to participate in the preservation loan servicing programs had expired. Even so, plaintiffs assert that Mrs. Velarde did not receive that notice. In response, defendant presented the return receipt cards for the December 30, 1988 acknowledgment (Exhibit D–61) and the March 8, 1989 notification (Exhibit D–63) signed by Mrs. Velarde to show her actual notice. Plaintiffs submitted nothing in reply, not even an affidavit from Mrs. Velarde denying notice. That is a telling absence as plaintiffs fail to establish there was a genuine issue regarding Mrs. Velarde's actual notice of her rights. See Fed.R.Civ.P. 56(e). Accordingly, plaintiffs' claims concerning notices are barred by the statute of limitations

516393 (7th Cir.1995). Second, defendant raised the statute of limitations as a defense in its answer to the complaint. Therefore, plaintiffs had clear notice of that defense and it would be manifestly unjust to not allow defendant to assert it now.

since this action was not commenced until July 1995, more than six years after the March, 1989, notice. 28 U.S.C. § 2401(a).

Even if the notice claims under the 1987 Act were not time-barred, plaintiffs have failed to provide any evidence or argument raising a genuine issue of fact or law that the notice was somehow inadequate. Accordingly, those claims are denied as a matter of law.

**B.** *Plaintiffs' claims that they were not given notice of and preference in sale of the Ranch in 1995.*

Plaintiffs claim that defendant, when selling the Ranch in 1995, denied them the following preferential right to purchase the Ranch (as well as notice of that right) under 7 U.S.C. § 1985(e)(1)(C): [6]

The secretary shall give preference in the sale ... of property that has been foreclosed, purchased, redeemed, or otherwise acquired by the Secretary to persons in the following order:

(I) The immediate previous borrower-owner of the acquired property.

(ii) If actively engaged in farming—

(I) the spouse or child of the previous borrower-owner; or

(II) a stockholder in the corporation, if the borrower-owner is a corporation held exclusively by the members of the same family.

(iii) The immediate previous family size farm operator of such acquired property.

(iv) Operators (as of the time immediately after such sale ... is entered into) of not larger than family-sized farms.

Because the government had continuously owned the Ranch since its acquisition through foreclosure of plaintiffs' ownership, plaintiffs claim that this section plainly provides them, as the "immediate previous bor-

rower-owner[s]," with statutory preference rights upon the Ranch's sale.

Defendant was also required to "provide written notice reasonably calculated to inform the immediate previous owner ... of the availability of" farmland for disposition under subparagraph (e). 7 U.S.C. § 1985(e)(6). As discussed above, defendant provided plaintiffs with written notice of their leaseback/buyback and homestead protection rights, but gave no notice of the preference rights set forth in § 1985(e)(1)(C).

Defendant readily acknowledges that it did not grant plaintiffs the preference right in the sale or any notice of it for various reasons. First, defendant asserts that it has correctly interpreted the applicable statutes and regulations promulgated thereunder as having essentially eliminated the preference right provided in subparagraph (C), asserting that right was in effect limited by Section 1985(e)(1)(A) which provides:

(I) During the 180–day period beginning on the date of acquisition, or during the applicable period under State law, the Secretary shall allow the borrower-owner (as defined in subparagraph (F)) to purchase or lease such property, if such borrower-owner acted in good faith as defined in the regulations issued by the secretary in connection with such loan.

(ii) The period for purchase or lease of real property described under clause (I), by a person described in clauses (I) or (ii) of subparagraph (C), shall expire 190 days after the date of acquisition, or after the applicable period under State law.

Simply stated, defendant claims that the preference right of subparagraph (C) was subject to the 190–day limitation set forth in subparagraph (A)(ii). Defendant's regulations at the time were consistent with this interpretation as they required no individual notice to the "previous borrower-owner" and in fact created a different preference scheme under which defendant has operated in this matter. 7 C.F.R. § 1955.107(f)(1995).[7] De-

---

**6.** Section 1985 was amended to eliminate those preference rights after the effective date of the sale.

**7.** Section 1955.107(f), 7 C.F.R. (1995), states in relevant part:

(f) *Selection of purchaser for farm property.* After leaseback/buyback and homestead protection rights have expired or been waived, suitable farmland must be sold in priority outlined in paragraph (f)(1) of this section. . . .

fendant argues that its interpretation is reasonable.

■ An agency's construction of its governing statutes is reviewed under a two-step analysis. First, the court must determine whether the statute is unambiguous. *Utah v. Babbitt,* 53 F.3d 1145, 1148 (10th Cir.1995) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). If it is, the court must give effect to that unambiguous congressional intent. *Id.* "The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Id.* If, on the other hand, the statute is ambiguous or silent on the issue in question, the court must decide whether the agency's interpretation is reasonable. *Id.* If so, the agency's construction must be given deference. *Id.*

■ Applying those standards to this case, I find that the language of subparagraph (C) standing alone is straight forward and unambiguous in giving plaintiffs a preference right upon sale of the Ranch. Defendant, however, in essence argues that ambiguity is created when subparagraph (C) is read in context of the entire statute and regulations, that its interpretation is reasonable and that I must defer to defendant's interpretation. I disagree.

First of all, defendant's argument that the subparagraph (C) preference rights are subject to the limitations found in § 1985(e)(1)(A) finds no support in the statutory text. The reference to subparagraph (C) in subparagraph (A)(ii) only identifies the persons subject to the 190–day limitation when exercising the rights granted under subparagraph (A) such as the leaseback. Those rights are distinct from the preference right under subparagraph (C). *See Calhoun v. USDA Farm Service Agency,* 920 F.Supp. 696, 704 (N.D.Miss.1996) (in dicta).[8] The subparagraph (A) limitation simply cannot be read to extend to the entirely different preference rights of subparagraph (C).

■ Likewise, defendant's reliance on the different priority scheme established in 7 C.F.R. § 1955.107(f)(1) is misplaced. That regulation was authorized under § 1988(e)(1)(B), but that authority is clearly limited to promulgation of regulations concerning the right to lease or purchase the property for 180 or 190 days pursuant to subparagraph (A), not to the ongoing preference, unlimited in time, pursuant to subparagraph (C). The regulation's preferences are much different ("beginning ... ranchers ... who are socially disadvantaged") and, hence, in conflict with the plain language of the subparagraph (C) preference ("immediate previous borrower-owner"). Moreover, defendant never promulgated a regulation implementing the distinct priority scheme of subparagraph (C). In essence, defendant has completely disregarded a clear congressional mandate and argues that an unrelated

---

(1) *Priority.* In selling suitable farmland, priority will be given to applicants in the following order, as determined by the County Committee:
(1) Beginning farmers or ranchers ... who are also socially disadvantaged....
(2) Beginning farmers or ranchers....
(3) Operators of not larger than family-sized farms ... who are also socially disadvantaged applicants....
(4) Operators of not larger than family-sized farms....
(5) Operators of not larger than family-sized farms, as of the time immediately after the contract of sale ... is entered into....
This is the basis for the notice of sale published by Defendant in June 1995 and quoted in the text at p. 1240.

8. *Calhoun* is the only case which deals directly with the subparagraph (C) preference right. In noting that my fellow district judge's observations with regard thereto were dicta, the government's attorney incorrectly implies that *United States v. Rode Corporation,* 996 F.2d 174 (7th Cir.1993), ruled on that issue and, hence, should be controlling or at least entitled to greater weight than a district court decision. "Farm Services Agency's Reply Supplemental Brief" (sic) page 5. In doing so, the government attorney persists in the erroneous claim that *Rode* addresses the preference issue. He is plainly wrong as *Rode* deals only with the leaseback/buyback provisions of subparagraph (A) and not the preferential right of subparagraph (C). To mischaracterize the Rode decision as holding that plaintiffs were not entitled to "a second notice of [a] first refusal right to purchase the ranch" is improper. See "FSA's Proposed Findings of Fact and Conclusions of Law," paragraph 33.

and inconsistent regulation should control. It needs no citation to observe that an agency cannot in effect amend unambiguous legislation by ignoring it or by relying on an inconsistent regulation.

■ Defendant also makes the curious argument that the notice of, and plaintiffs' failure to exercise, the lease/option and homestead retention rights meant that plaintiffs lost their preferential right to purchase (or, as the government calls it, a "bare right to first refusal to purchase"). Defendant's argument is based upon the assumptive, naked conclusions that the former rights were "more favorable" than the "bare right to first refusal" and notice of the "greater" right obviates the need to give notice of the "lesser" right. Not surprisingly, defendant cites no authority for these propositions.

■ One cannot so facilely assume away one distinct right in property when another is lost or not exercised. Such a vanishing act would be inconsistent with our tradition of preserving distinctions and unique aspects of various rights in property. *Willson v. Terry*, 265 Mont. 119, 874 P.2d 1234 (1994) ("the legal distinction [between an option and right of first refusal] is very important" Id. at 1236). Certainly, it is black letter law that the right to lease property is different than the option or right to purchase it.[9] The preference right to purchase (the right of first refusal or preemptive right), although related, is a species or variety distinct from the option. An option is the right to buy the property for a fixed price by an established deadline. On the other hand, the right of first refusal gives a preemptive right

to purchase only when the owner decides to sell for terms set at that time. Id.; *Atchison v. City of Englewood*, 170 Colo. 295, 463 P.2d 297 (1969).

The differences are only emphasized when one adds the time factor. Plaintiffs subparagraph (A) rights (leaseback/option) were time-limited (180 or 190 days). On the other hand, the preferential right to purchase under subparagraph (C) was attached to the government's ownership for an indefinite time (it remained until the government decided to dispose of the property which, as demonstrated here, may be years in the future). That time difference alone shows how distinct the two rights are without deciding which is the "greater" or "more favorable" right.[10] Regardless, those legal differences will be maintained and the distinct right protected.[11]

■ I conclude that the plaintiffs have a distinct preferential right to purchase the Ranch at the established price of $185,000, pursuant to 7 U.S.C. § 1985(e)(1)(C), as well as right to notice of that right, pursuant to 7 U.S.C. § 1985(e)(6). Because the Ranch was advertised for sale and sold in conflict with or in violation of those express statutory mandates, the sale to Mayfield must be set aside pursuant to 5 U.S.C. § 706(2) and a new sale rescheduled consistent with subparagraph (C).[12] The statute and regulations are silent as to the manner of exercising the preferential right, including the time within which it must be exercised. This suggests that congress intended that defendant would determine a reasonable time for exercising

9. The right to purchase ownership is a right to the freehold estate while the right to lease is less than a freehold estate. *Estates*, 28 Am.Jur.2d § 130.

10. Arguably the ongoing right to purchase for whatever price the government may establish by appraisal or bid is more significant than a time-limited right to lease with an option to purchase.

11. It is regrettable that defendant did not recognize these obvious differences. Had it done so, I doubt that this matter would be before the Court. If plaintiffs had been given the opportunity, they either would have purchased the property or declined (or been unable) to do so and this litigation would not have eventuated.

12. Consideration was given whether Mayfield should be given special status upon sale pursuant to subparagraph (C). I conclude that she should not because to do so would strike at the very heart of the reasoning of this decision. Mayfield is entitled to a preference only if she qualifies under 7 U.S.C. § 1985(e)(1)(C), as of June 1995. That is the only way to establish preference consistent with my *ratio decidendi*. Given the impropriety of the prior sale, Mayfield does not have any vested interest. I should also note that the government has allowed Mayfield and her husband the occupancy of the Ranch on a rent-free basis pending the outcome of this litigation.

the right in light of the purposes of the Act. *See Rubio–Rubio v. INS,* 23 F.3d 273, 276–277 (10th Cir.1994). What is reasonable may be debatable. Subparagraph (A) allowed 180 days for a "borrower-owner" to lease or purchase a property. When advertising the Ranch for sale in 1995, defendant in effect gave 37 days notice to the beneficiaries of the preference scheme the government erroneously believed applicable. With that range in mind, and given the duration of this litigation, I conclude that it would be reasonable for the defendant to give plaintiffs and, if different, other parties entitled to preference under § 1985(e)(1)(C) (i, ii and iii), at least 60 days written notice from the date the notice is mailed within which those parties may exercise their preferential rights.

Accordingly, it is ordered as follows:

1. Summary judgment shall be entered in favor of the United States of America, Department of Agriculture, Farm Service Agency and against the plaintiffs Frank Velarde and Lydia Velarde on their claims of inadequate notice of their leaseback/buyback and homestead protection rights under 7 U.S.C. §§ 1985(e)(3)(A) and 2000(c)(1)(6).

2. Summary judgment shall be entered in favor of the plaintiffs Frank Velarde and Lydia Velarde and against the defendant United States of America, Department of Agriculture, Farm Service Agency, on plaintiffs' claims that they were not given the preferential right to purchase the Ranch pursuant to 7 U.S.C. § 1985(e)(1)(C) when defendant sold the Ranch in 1995.

3. Defendant's sale of the Ranch to Mary Mayfield is set aside.

4. Defendant shall dispose of the Ranch in the following manner:

(a) The price shall remain $185,000;

(b) Defendants shall give preference in the order mandated by 7 U.S.C. § 1985(e)(1)(C) (1995) with plaintiffs being given the first priority as the "immediate previous borrower-owner[s] of the acquired property";

(c) The preferences shall be established as of June 1995, the date the Ranch was originally advertised for sale;

(d) Give plaintiffs and, if different, any "immediate previous family-sized farm operator of" the Ranch as of June 1995, at least 60 days written notice from the date it sends notice within which they may exercise their preference rights pursuant to 7 U.S.C. § 1985(e)(1)(C); and

(e) Publish and post an announcement of the availability of the Ranch for purchase at least 40 days prior to the scheduled sale.

5. The parties shall be responsible for their or its attorney fees.

6. Plaintiffs shall be entitled to their costs and may file a bill of costs within 15 days of the date hereof.